UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHARLES W. PIKE,**

    **Plaintiff,**

v.                                                        Case No:  5:12-CV-146-Oc-UATCPRL

**TRINITY INDUSTRIES, INC. and
TRINITY HIGHWAY PRODUCTS,
LLC**

    **Defendants.**

_____

## ORDER

This cause is before the Court on Plaintiff's Motion to Overrule Defendants' Objections to Plaintiff's Request for Production (Doc. 77) and Plaintiff's Motion to Extend the Expert Discovery Deadline (Doc. 82).  On March 4, 2013, the Court held a hearing on these motions.  The Court, however, deferred ruling at the hearing to allow the parties an opportunity to brief the issue of whether this Court is limited by a protective order involving these Defendants (Doc. 59, Exh. L) that is in effect in the District Court for the Eastern District of Virginia in *Trinity Industries, Inc. and Texas A&M University v. SPIG Industry, LLC*, No. 1:11-cv-937-CMH-TRJ (E.D. Va.)) ("Virginia Litigation" or "Virginia case").  (Doc. 96).  On March 15, 2013, the parties timely filed their supplemental briefs.  (Docs. 97-98).  Based on the following discussion, Plaintiff's motion to overrule Defendants' objections (Doc. 77) is **DENIED** and Plaintiff's motion to extend the expert disclosure deadlines (Doc. 82) is **GRANTED**.

### I. B<small>ACKGROUND</small>

Plaintiff filed an action in Florida state court alleging that he was badly injured when a defective guardrail system that was designed, manufactured, and/or sold by Defendants impaled

him during a motor vehicle accident. (Doc. 77). Almost one full year of discovery was conducted in the state court case, which was set for trial the week of March 19, 2012. (Doc. 87). On March 19, 2012, Plaintiff dismissed his state court action and filed the instant action. (Doc. 87). In this action, Plaintiff asserts various theories of negligence and strict liability, including failure to warn and design defect claims. (Doc. 77).

On November 20, 2012, Plaintiff served a request to produce on Defendants for all documents in the Virginia case: Plaintiff sought "[a]ll documents produced by [Trinity Industries and Trinity Highway Products] in the case of *Trinity Industries Inc. and Texas A&M University System v. SPIG Industry, LLC*, No. 1:11-cv-937 CMH-TRJ (E.D. Va.) . . . ." (Doc. 77). Plaintiff then itemized his request into fifteen subparts. (Doc. 77). Notably, the parties dispute the nature of the Virginia case. Defendants argue that the Virginia Litigation is simply a patent case, which is irrelevant here. (Doc. 87, at 12). In contrast, Plaintiff contends the Virginia Litigation is relevant because a central issue in the Virginia Litigation was whether the guardrail system (at issue in this litigation) was "approved for use" and/or "approved for sale." (Doc. 77, at 11). Importantly, on April 11, 2012, the parties in the Virginia Litigation entered into an Amended Stipulated Protective Order ("Virginia Protective Order"). (Doc. 59, Exh. L). At issue here is whether this Court (in considering discovery disputes) is limited by the Virginia Protective Order.

The parties also dispute the <u>scope</u> of discovery, citing to an Order entered by Judge Smith on June 22, 2012, wherein "[t]he Court [found] that documents related to [Defendants'] decision to alter its design from a five inch channel to a four inch channel [were] relevant to this case . . ." and that "Plaintiff's requests [should] be limited to the years 2004 (which is the year preceding the alleged effective date of the design change) through the present." (Doc. 37).

## II. D<small>ISCUSSION</small>

The scope of discovery is broad "in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement." *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998). The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980); *see also Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984).

While the scope of discovery is broad, it is not without limits. *Washington v. Brown & Williamson Tobacco,* 959 F.2d 1566, 1570 (11th Cir.1992). Courts have long held that "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Donahay v. Palm Beach Tours & Transp., Inc.*, 2007 WL 1119206 (S.D. Fla. Apr. 16, 2007) (citing *Food Lion, Inc. v. United Food & Commercial Workers Intern., Union,* 103 F.3d 1007, 1012-13 (C.A.D.C.1997) (quoting *Broadway and Ninety Sixth Street Realty Co. v. Loew's Inc.,* 21 F.R.D. 347, 352 (S.D.N.Y.1958)).

Objections to discovery must be "plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)). Objections to discovery on the grounds that it is over broad and not relevant are not sufficient, the objecting party should state why the discovery is overly broad or not relevant. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). The objecting party must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Lane v. Capital Acquisitions,* 242 F.R.D. 667, 670 (S.D. Fla. 2005). "'Instead, the objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, ... each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Id.* (*quoting Compagnie Francaise d'Assurance Pour leCommerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984)).

**A. Plaintiff's Motion to Overrule Defendants' Objections to Plaintiff's Request for Production (Doc. 77)**

Plaintiff asks the Court to enter an Order overruling Defendants' objections to Plaintiff's request for "[a]ll documents produced by [Trinity Industries and Trinity Highway Products] in the case of *Trinity Industries Inc. and Texas A&M University System v. SPIG Industry, LLC*, No. 1:11-cv-937 CMH-TRJ (E.D. Va.) . . . ." (Doc. 77). Defendants have objected to producing these documents contending that the information is subject to the Virginia Protective Order (Doc. 59, Exh. L); and argue, therefore, that it is confidential. Defendants also object to the production contending that Plaintiff's request is overly broad because it is not limited in any way, is unduly burdensome because of the amount of documents involved, is duplicative because Defendants

have already provided this information to Plaintiff in response to Plaintiff's first request for production, and is not relevant because of the differing nature of the Virginia case.

The Court finds that Plaintiff's request for production, which is the subject of his motion (Doc. 77), is overly broad and, therefore, is due to be **denied**. Not only does Plaintiff appear to request every litigation document in the Virginia case (i.e., "[a]ll documents produced by [Trinity Industries and Trinity Highway Products] in the case of *Trinity Industries Inc. and Texas A&M University System v. SPIG Industry, LLC*, No. 1:11-cv-937 CMH-TRJ (E.D. Va.) . . . ."); but also, while the issues litigated in the Virginia case may have some relevance here, the Virginia case, as a whole, is clearly not directly relevant. Again, this is a case about negligence and strict liability, including claims of failure to warn and design defects; while the Virginia case, principally, is about a patent issue.

In any event, the information sought (as phrased) appears to be protected by the terms of the Virginia Protective Order. This is not to say, however, that some information is not discoverable – e.g., items that Defendants have kept in the course of business and are relevant to the instant case may be discoverable even if they were produced in the Virginia Case under the Virginia Protective Order, but only if Plaintiff directly requests them independent of the Virginia case. In other words, it seems unlikely that the Defendants can be shielded from producing their own business records, even if such records were in turn produced in discovery in the Virginia case. But, in the context of this request, Plaintiff does not seek records of the Defendants independent of the Virginia case; instead, Plaintiff specifically ties the requests to the Virginia case, for which there is a pending order of protection. To compel production from the Defendants, as the request to produce is currently made, would be to compel Defendants to

directly violate a Protective Order, for which Plaintiff has failed to persuade the Court it has the authority to do (or should do even if such authority exists).

More specifically, Plaintiff argues that this Court should compel the requested discovery by modifying or circumventing the Virginia Protective Order. In contrast, Defendants argue that Plaintiff should move to intervene in the Virginia case for relief from the Virginia Protective Order. Here, the Court is persuaded by the express terms of the Virginia Protective Order, which provides that "[a]ll protected information will be used solely for the purposes of preparation, trial, and appeal of this Action, or any settlement or other negotiations relating to this Action, and for no other purpose, absent further order of the Court or the written consent of the Disclosing Party . . . ." (*See* Doc. 59, Exh. L, ¶ 3). The Virginia Protective Order further provides that "[t]he obligations imposed by this Protective Order will remain in effect after the final disposition of this Action until a Disclosing Party agrees otherwise in writing or a court order otherwise directs . . . ." (*See* Doc. 59, Exh. L., ¶ 19(a)). And, with respect to intervention, it provides that "[e]ntry of this Protective Order will be without prejudice to the application by any Party or Non-Party . . . for relief from any restriction contained herein . . . ." (*See* Doc. 59, Exh. L. ¶ 21).

The Court is also persuaded by the following examples that demonstrate that typically it is the court that issues the protective order that has the power to modify it. *See e.g., Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corporation*, 271 F.R.D. 530, 534 (S.D. Fla. 2010) (finding that "[p]ermissive intervention is the proper method for a nonparty to seek modification of a protective order."); *Marshall v. Planz*, 347 F. Supp. 2d 1198, 1201 (M.D. Ala. 2004) (finding that the issuing court "has the power to modify, and even vacate, its protective orders, even after final judgment as long as the protective orders are outstanding and thus

enforceable."); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (finding that "[a]s long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."); *Public Citizen v. Liggett Group, Inc.*, 858 F. 2d 775, 782 (1st Cir. 1988) (finding that because a protective order is essentially an injunction against the parties over which a court retains jurisdiction as long as it is outstanding, "the district court ha[s] the power to make postjudgment modifications to the protective order"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866 (E.D. Pa. 1981) (finding that the modification by the issuing court of a confidentiality order after summary judgment had been granted was proper). Accordingly, by these examples and the terms of the Virginia Protective Order, the Court is persuaded that to the extent Plaintiff seeks documents that were in the Virginia case and subject to the Virginia Protective Order (which are not held by Defendants independently of the Virginia Litigation), Plaintiff should seek remedy in the Virginia Court.

Based on the foregoing, the Court finds that Plaintiff's request, as phrased (i.e., for "all documents" produced by Defendants in the Virginia case), is not only overly broad, but also violates the Virginia Protective Order.

Plaintiff, however, is not without any recourse. The rules of discovery allow Plaintiff to directly request documents from the Defendants that they retain in the course of their business (if relevant). Plaintiff is also free to issue third party subpoenas and, of course, engage in depositions. Here, Plaintiff attempts to avoid the burden and costs of some of that process by merely requesting an entire case file from a separate litigation, which just so happens to be limited largely by a protective order.

Insofar as Plaintiff makes additional discovery efforts, Plaintiff should be mindful of the following: (i) to the extent that Plaintiff is seeking documents specific to the Virginia case and subject to the Virginia Protective Order, the Court is disinclined to compel production that would cause Defendants to violate the Virginia Protective Order; thus, Plaintiff must seek remedy in the Virginia Court; (ii) to the extent that Plaintiff seeks documents in Defendants' possession that Defendants would have <u>independent</u> of the Virginia case, those documents, if requested <u>directly</u>, are likely subject to production; (iii) to the extent Plaintiff seeks documents that were in the Virginia case, but not subject to the Virginia Protective Order, Plaintiff must make direct and specific requests for them, assuming they are relevant; (iv) to the extent that Plaintiff seeks testimony that may be found in depositions taken in the Virginia case that are subject to the Virginia Protective Order, Plaintiff's remedy is to depose those people to the extent that they may have information relevant to this litigation; and (v) to the extent that Plaintiff seeks depositions taken of individuals for the purpose of the Virginia Litigation, but not subject to the Virginia Protective Order, Plaintiff must make direct and specific requests for them, again, assuming they are relevant.

Moreover, to the extent that Defendants complain that it has already produced the information that Plaintiff seeks (*see* Doc. 87, at 15-18), in Plaintiff's new request (if one is made), Plaintiff should specifically state what it is that he is seeking and make it clear that he does not already have it.[1]

---

[1] Notably, the parties also dispute the <u>scope</u> of discovery, citing to an Order entered by Judge Smith on June 22, 2012, wherein "[t]he Court [found] that documents related to [Defendants'] decision to alter its design from a five inch channel to a four inch channel [were] relevant to this case . . . " and that "Plaintiff's requests [should] be limited to the years 2004 (which is the year preceding the alleged effective date of the design change) through the present." (Doc. 37). The Court finds that the scope of discovery outlined in Judge Smith's Order (Doc. 37) is well-

Accordingly, for the reasons set forth herein, Plaintiff's Motion (Doc. 77) is **DENIED**. If, after careful review of this Order, Plaintiff determines that he would like to serve an amended request to produce on Defendants, Plaintiff shall do so on or before **April 25, 2013.**

### B. Plaintiff's Motion to Extend the Expert Discovery Deadline (Doc. 82)

Pursuant to the Court's Case Management and Scheduling Order, Plaintiff's expert disclosure was due February 28, 2013 and Defendants' expert disclosure was due March 25, 2013. (Doc. 24). On March 5, 2013, the Court determined that "[t]he parties need not make disclosure of their experts . . . [but that] all other deadlines in the Court's Case Management and Scheduling Order [would] remain unchanged until the Court rules on Plaintiff's Motion to Overrule Defendants' Objections to Plaintiff's Request for Production (Doc. 77). (*See* Doc. 96, n.2).

In his Motion (Doc. 82), Plaintiff asks the Court to extend his expert disclosure deadline from February 28, 2013, until June 28, 2013, and asks the Court to extend Defendants' expert disclosure deadline from March 25, 2013, until August 21, 2013. (Doc. 82, ¶ 1). Plaintiff seeks these extensions contending that Defendants have withheld information that Plaintiff's experts need to review before finalizing their opinions. (Doc. 82, ¶ 3). The information that Plaintiff claims that Defendants have improperly withheld is the information subject to Plaintiff's Motion (Doc. 77), which has been addressed above. Defendants oppose the relief Plaintiff requests. (Doc. 90).

---

reasoned and, at this time, there is no reason presently before the Court to alter it. Plaintiff should be mindful of these already litigated limitations. If Plaintiff seeks discovery outside of these limits, Plaintiff should be prepared to articulate a basis for doing so as to each and every request.

In light of the Court's decision on Plaintiff's Motion (Doc. 77) above, and upon due consideration, Plaintiff's Motion (Doc. 82) is **GRANTED** to the extent set forth herein. Accordingly, the deadlines in the Scheduling Order (Doc. 24) are extended as follows:[2]

| | |
|---|---|
| **Plaintiff's Expert Disclosure** | **June 3, 2013** |
| **Defendants' Expert Disclosure** | **July 1, 2013** |
| **Discovery** | **July 25, 2013** |
| **Dispositive and *Daubert* Motions** | **August 26, 2013** |
| **All Other Motions Including Motions In Limine** | **December 12, 2013** |
| **Joint Final Pretrial Statement** | **December 12, 2013** |
| **Final Pretrial Conference** | **December 18, 2013 at 10:00 a.m.** |
| **Trial Term Begins** | **January 6, 2014 at 9:00 a.m.** |

Other than extending the deadlines of the Scheduling Order, **the parties shall otherwise be governed by the terms of the previously entered Case Management and Scheduling Order** (Doc. 24).

**IT IS SO ORDERED**.

**DONE** and **ORDERED** in Ocala, Florida on April 11, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

The Honorably Timothy J. Corrigan
Counsel of Record

---

[2] The Mediation Deadline in the Court's Case Management and Scheduling Order (Doc. 24) will remain unchanged.